UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

DEAWENDOE S. M.,[1]

                Plaintiff,

    v.

COMMISSIONER, Social Security
Administration,

                Defendant.

Case No. 6:21-cv-01140-CL

**OPINION AND ORDER**

**CLARKE,** United States Magistrate Judge:

    Plaintiff Deawendoe S. M. seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her applications

for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and

supplemental security income ("SSI") under Title XVI. This Court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a

---

[1] In the interest of privacy, the Court uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ.

P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 6. For the reasons provided below, the

Commissioner's decision is REVERSED and this case is REMANDED for an immediate

calculation and payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB in July 2018 with an alleged onset date of

March 15, 2017. Tr. 13.[2] Plaintiff's applications were denied initially in January 2019, and again

upon reconsideration in August 2019. *Id.* Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ") and a hearing was held in October 2020. *Id.* On December 16, 2020, the ALJ

issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 28. The

Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final

decision of the Commissioner. Tr. 1. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 39 years old on her alleged onset date. Tr. 28. She has a high school

education and past relevant work as a construction worker. *Id.* Plaintiff alleges disability based

on post-traumatic stress disorder ("PTSD"), arthritis, and various mental health conditions. Tr.

242.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11.

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954–55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 16. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, learning disorders in math and written expression, and cannabis use disorder. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or

medically equaled the severity of a listed impairment. Tr. 17. The ALJ found that Plaintiff had

the following RFC:

> [Plaintiff] has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> [Plaintiff] can frequently climb ramps and stairs and occasionally
> climb ladders, and never climb ropes or scaffolds and can
> occasionally stoop, kneel, crouch and crawl; and can perform
> simple routine tasks and can have occasional superficial contact
> with the general public and occasional contact with coworkers; and
> can perform work involving only occasional changes in the work
> routine and setting.

Tr. 18. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant

work. Tr. 26. At step five, the ALJ found, in light of Plaintiff's age, education, work experience,

and RFC, a significant number of jobs existed in the national economy such that Plaintiff could

sustain employment despite her impairments. Tr. 26. The ALJ thus found Plaintiff was not

disabled within the meaning of the Act. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper

legal standards and the legal findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see

also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means

'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v.

Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53

F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court

must weigh "both the evidence that supports and detracts from the [Commissioner's]

conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of

the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff asserts remand is warranted for two reasons: (1) the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony; and (2) the ALJ erred by improperly rejecting medical opinion evidence. Pl.'s Br. 5, ECF No. 17. The Court addresses each argument in turn.

## I.    Subjective Symptom Testimony

As mentioned, Plaintiff assigns error to the ALJ's evaluation of her subjective symptom testimony. Pl.'s Br. 17–21, ECF No. 17.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the

evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3]
SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire
case record, including the objective medical evidence; an individual's statements about the
intensity, persistence, and limiting effects of symptoms; statements and other information
provided by medical sources and other persons; and any other relevant evidence in the
individual's case record." *Id.* at *4.

At her hearing, Plaintiff testified that she is homeless and lives in a tent on the street. Tr.
38, 54. Plaintiff explained that she experiences "a lot of pain and ha[s] a lot of breakdowns[.]"
Tr. 42. Plaintiff testified that, during these breakdowns, she feels her heart racing, becomes
scared, and wants to run. Tr. 47. Plaintiff experiences depression and anxiety. Tr. 49. Plaintiff
testified that she "always thinks" about suicide, "but [has not] acted on it since 2018." Tr. 52.
Plaintiff also explained that her cannabis usage is "the thing that helped [her] the most and
helped [her] stop trying to kill [herself]." Tr. 54. Plaintiff testified that she has difficulty grocery
shopping because "[t]here are too many people" and she "get[s] anxiety attacks being around a
lot of people." Tr. 55. Plaintiff described her anxiety attacks as when "[she] just want[s] to run
and [she] get[s] scared, overwhelmed" and that her "heart races, and [she] can't control it." *Id.*
She has left homeless shelters in the past because there were too many people there. *Id.* Plaintiff
also testified that she cannot sit or stand for eight hours. Tr. 49. Plaintiff testified that she always
experiences back pain and that the severity of that pain depends on her activity. Tr. 50. Plaintiff
explained that she cannot bend over, sit, or stand for too long in one spot. *Id.* She also testified
that she cannot walk without her hips hurting and that she cannot bend over to pick things up
from the ground. *Id.* Plaintiff testified that her hands swell and that she experiences shooting pain

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, 2017 WL 5180304, at *1–2 (S.S.A. Oct. 25, 2017).

in her hands and neck. Tr. 52. Plaintiff also testified that she cannot stay asleep because she wakes up in pain. Tr. 254.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19. The Commissioner asserts that the ALJ supplied four valid rationales that undermined Plaintiff's subjective complaints: (A) an inconsistency with the medical record; (B) conservative treatment; (C) an inconsistency with her activities of daily living; and (D) work history. Def.'s Br. 3–10, ECF No. 21.

### A.    Medical Record

As noted, the Commissioner asserts that the ALJ properly discounted Plaintiff's allegations because they were inconsistent with the objective medical evidence. Def.'s Br. 5–6, ECF No. 21. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Moreover, especially in the mental health context, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects long-standing psychological disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

An independent review of the record establishes that Plaintiff's subjective complaints about her mental health conditions are more than amply supported in the record. Plaintiff has a well-documented history of mental health conditions. *See, e.g.*, 336, 340, 344–45, 348–49, 360–61, 384, 386, 389, 393, 398, 401–02, 403–04, 416, 418, 421, 424, 435, 470, 501, 540, 548, 589–93, 594–95, 616–41, 644, 662, 665, 680, 687, 701, 710 (anxiety); 336–37, 340–41, 344–45, 348–49, 360–61, 384, 386, 389, 393, 398, 401–02, 403–04, 416, 418, 421, 428, 434–37, 470, 477, 498, 501, 531, 540, 544, 548, 560, 589–93, 594–95, 616–41, 644, 662, 665, 680, 687, 701, 710 (depression); 384, 393, 424, 428, 434–37, 470, 477, 484, 498, 531, 538–39, 544, 548, 560, 589–93, 594–95, 616–41, 662, 665, 680, 687, 701, 710 (PTSD); 544, 589–93, 680, 701, 710 (panic attacks); 336, 340, 344–45, 349, 413–14, 470, 594, 620, 644, 662, 680, 687 (insomnia); 398, 428, 433, 471, 680, 685 (self-harm).

For example, an October 2011 treatment note reflects that Plaintiff attempted suicide by overdose and that she had a history of major depressive disorder with recurrent episodes as well as PTSD. Tr. 331; *see also, e.g.*, Tr. 336–37 (noting Plaintiff's long-standing history of depression). That treatment note also reflects that Plaintiff attempted suicide in 2010. *Id.* A February 2016 assessment reflects that Plaintiff "struggles with passive suicidal ideation and a history of suicidal intent" and notes Plaintiff's suicide attempts between 2008 and 2013. Tr. 384. A March 2016 psychiatric evaluation notes that Plaintiff had previously attempted suicide five or six times. Tr. 381. An April 2016 treatment note reflects that Plaintiff threatened to die by suicide and that Plaintiff's provider arranged for a welfare check with local police. Tr. 415. A July 2018 assessment notes that Plaintiff "struggles with boundary setting, shame, negative self-talk, lack of sense of self-esteem/self-worth, past trauma, hopelessness, thoughts of self-harm, and suicidal ideation." Tr. 389. That assessment also noted that Plaintiff experiences active

suicidal ideation roughly once every two weeks, that Plaintiff experiences passive suicidal ideation daily, and that Plaintiff began cutting when she was about twelve years old. Tr. 390–91; *see also* Tr. 433 (noting Plaintiff's "history of chronic daily [suicidal ideation] for over past decade"). A December 2018 treatment note reflects that Plaintiff experienced suicidal ideation and "wanted to jump off a bridge." Tr. 428. A January 2019 treatment note reflects that Plaintiff told a police officer that "she was tired of being homeless and wanted to die[.]" Tr. 464, 468. Two weeks later, Plaintiff again presented with suicidal ideation and was voluntarily admitted. Tr. 466. Plaintiff was later placed in an involuntary five-day hold due to recurring suicidal ideation. Tr. 489. A March 2019 treatment note reflects that Plaintiff reported suicidal ideation and that "she will likely attempt suicide someday." Tr. 540. A July 2019 treatment note reflects that Plaintiff reported that "[her] thoughts won't stop and [she] wants to kill [her]self." Tr. 618. A January 2020 treatment note reflects that Plaintiff experienced suicidal ideation and stated that she "[doesn't] want to be here, alive, at all." Tr. 584.

Plaintiff also has a well-documented history of medications prescribed for her mental health conditions, including prescriptions for Duloxetine, Trazodone, Setraline, Geodon, Lexapro, Effexor, Paxil, Venlafaxine, Zoloft, Lithium, Geodon, Wellbutrin, Prozac, and Vistaril. *See, e.g.*, Tr. 344, 359, 362, 382, 383, 412–16, 436, 470–71, 540, 543, 595, 694. Multiple treatment notes reflect that Plaintiff experienced negative side effects with limited improvement in symptoms. *See, e.g.*, Tr. 344 (reflecting Plaintiff's statement that she has tried multiple medications, but they do not help her); 413 (reporting negative experiences with Zoloft, Lexapro, Lithium, and Geodon); 540 (reporting that she "experienced terrible side effects" from Lithium and Wellbutrin); 543 (reporting that "the medications they put me on really didn't work too

well"); 595 (noting that Wellbutrin made Plaintiff suicidal and that Lexapro, Zoloft, and Prozac "numbed" her); 694 (noting Wellbutrin caused Plaintiff to jump off bridge).

During medical examinations, Plaintiff regularly presented with a depressed mood and anxious affect. *See, e.g.*, Tr. 382 (presenting as "dysthymic"); 384 (appearing sad), 390 (appearing depressed and tearful); 408 (presenting as depressed and tearful); 417 (appearing tired, distressed, and unkempt); 418 (presenting with low mood); 419–20 (appearing unkempt); 430 (appearing depressed and tearful with suicidal ideation); 441, 449 (presenting as tearful, depressed, and "triggered"); 453 (presenting as tearful with sad mood and constricted affect); 473 (presenting as tearful and dysphoric); 480 (presenting as dysphoric with suicidal ideation); (presenting as tearful, fearful, and depressed); 541 (presenting as tearful); 584 (presenting as tearful, anxious, and depressed); 696 (presenting as dysphoric, nervous, and anxious). Plaintiff's medical records also reflect that she is homeless, *see, e.g.*, Tr. 344, 389, 394, 424, 428, 434, 442, 461, 464, 501, 694, and that Plaintiff has a history of trauma that includes abuse and domestic violence, *see, e.g.*, Tr. 344, 381, 384, 386, 393, 436, 444, 473.

Here, the medical record clearly supports Plaintiff's subjective complaints about her long-standing mental health conditions. In other words, the ALJ cherry-picked isolated instances of certain psychological symptoms when Plaintiff's medical record as a whole reflects Plaintiff's long-standing psychological disabilities. *See Ghanim*, 763 F.3d at 1164; *see also Garrison*, 759 F.3d at 1017. Contrary to the Commissioner's assertions, the record reflects long-standing psychological disabilities that cannot plausibly be said to result from "situational stressors." *See* Def.'s Br. 7, ECF No. 21 ("The ALJ acknowledged some brief worsening of mental symptoms occurring during situational stressors."). Chronically experiencing homelessness or suffering

domestic violence and abuse for years are not "situational" stressors because neither circumstance is temporary.

To the extent the record contains any evidence of brief periods of improvement in symptoms, such evidence is vastly outweighed by the medical record showing Plaintiff suffers from long-standing psychological disabilities spanning over a decade. For example, the Commissioner notes that Plaintiff "reported Thorazine was effective" but "later denied it helped with her mood." Def.'s Br. 5, ECF No. 21. It is well established in the Ninth Circuit that a plaintiff's brief response to treatment is not a clear and convincing reason to reject her subjective symptom testimony. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Ghanim*, 763 F.3d at 1162 (noting that the "fact that a person suffering from depression makes some improvement does not mean that person's impairment no longer seriously affects his ability to function in the workplace" (citation, internal quotations, and bracketing omitted)).

Moreover, an independent review of the record also establishes that Plaintiff's subjective complaints about her physical health conditions are amply supported in the record. Plaintiff regularly presented with pain in her feet, legs, neck, shoulders, back, and hips. *See, e.g.*, 337, 341, 352, 424, 554, 607, 611, 648, 693–94 (leg and foot pain); 337, 341, 352, 360, 648, 695, 702, 714, 716 (shoulder, neck, and upper limb pain); 338, 340, 344, 348, 424, 648, 693–94 (back pain); 344, 648 (pain radiating to hips); 424 (unable to walk). For example, an August 2020 treatment note reflects that Plaintiff was "[p]ositive for arthralgias, back pain, gait problem, joint swelling, myalgias, neck pain and neck stiffness." Tr. 696. Multiple treatment notes reflect a

history of chronic back pain. *See, e.g.*, 337, 341, 344–45, 348, 554, 559, 607, 611, 648, 693–94, 702. Multiple treatment notes also reflected that Plaintiff had pain and degeneration in her lumbar spine. *See, e.g.*, Tr. 378 (noting "moderately severe narrowing and endplate sclerotic change at L4-5" and "degenerative changes of the endplates at L4-5"); 378 (noting "moderately severe facet arthrosis at L4-5 and L5-S1"); 607 (noting moderately severe arthritis in lumbar spine); 677 (noting "[s]evere degenerative disc disease at the L4-5 level"); 679 (noting myalgias), 705 (noting Plaintiff "exhibits tenderness (bilateral SI joint ptp), pain and spasm" in her lumbar back). As such, the medical record was not a clear and convincing reason to reject Plaintiff's testimony.

### B.    Conservative Treatment

The Commissioner next asserts that the ALJ properly rejected Plaintiff's testimony based on conservative treatment. Def.'s Br. 4–6, ECF No. 21. In some circumstances, a claimant's treatment record can form the basis upon which to reject a claimant's testimony. *See, e.g., Parra*, 481 F.3d at 750–51 (noting that "conservative treatment" was sufficient to discount the claimant's testimony regarding allegedly disabling pain); *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) ("[A] claimant's failure to assert a good reason for not seeking treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.") (citation omitted). However, adjudicators are required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted).

The Ninth Circuit has held previously that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive

treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding unless one of a "number of good reasons for not doing so."). When denying benefits based on noncompliance with treatment, the ALJ "must examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy [their] impairment." *Byrnes v. Shalala,* 60 F.3d 639 (9th Cir. 1995) (internal quotations omitted). Moreover, the Ninth Circuit has been clear that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)

First, the record reflects that Plaintiff is homeless and struggled to maintain stable housing. *See, e.g.*, Tr. 344 ("[Plaintiff] states she has nowhere to go."); 389 (Plaintiff reporting "unstable living situation" and "significant transportation limitations"); 394 (noting that Plaintiff needed transportation assistance to get to and from her appointments); 424 (noting that Plaintiff "has no primary care physician"); 424 (Plaintiff reporting living in a homeless shelter); 434 (Plaintiff reporting she lives in the woods); 464 (noting that "[h]omelessness is a significant aggravating . . . factor[] relating to the present illness"); 428, 442, 461, 501, 694 (noting Plaintiff's homelessness).

Second, the record reflects that Plaintiff's symptoms did not improve with physical therapy. *See, e.g.*, Tr. 336 ("[Plaintiff h]as had four physical therapy visits without improvement, now starting to have left knee pain as well due to doing lunges and squats."); 338 (noting that Plaintiff's "[l]ow back pain not improved with . . . physical therapy."); 380 (noting that Plaintiff "attended multiple individual therapy sessions and group therapy sessions, but made little

progress in treatment" and that Plaintiff's goals "could not be made through therapy"); 424

(noting Plaintiff "had physical therapy for her back in the past which did not seem to help"); 667

(Plaintiff reporting that physical therapist told her "nothing was wrong with her").

After a review of the ALJ's decision and the medical record, there is no indication that

the ALJ adequately considered information in the medical record indicating Plaintiff's reasons

for not seeking more aggressive treatment. As such, this was not a clear and convincing reason to

reject Plaintiff's testimony.

### C.    Activities of Daily Living

The Commissioner contends the ALJ properly rejected Plaintiff's testimony based upon

her activities of daily living. Def.'s Br. 8, ECF No. 21. Activities of daily living can form the

basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities

"contradict [a claimant's] testimony;" or (2) as evidence a claimant can work if the activities

"meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however,

need not be utterly incapacitated to receive disability benefits, and sporadic completion of

minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260

F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(requiring the level of activity to be inconsistent with the claimant's alleged limitations to be

relevant to her credibility).

The Commissioner cites Plaintiff's ability to prepare meals, shop in stores, manage

money, clean, perform yardwork, attend a powwow, walk by the river, and take the bus and

asserts those activities conflict with Plaintiff's testimony. Def.'s Br. 8, ECF No. 21. The Ninth

Circuit, however, has consistently held that such a modest level of activity is not sufficient to

reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted

that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). As such, this was not a clear and convincing reason to reject Plaintiff's testimony.

### D.    Work History

The Commissioner asserts Plaintiff stopped working for reasons unrelated to her impairments and therefore the ALJ properly rejected Plaintiff's testimony. Def.'s Br. 9, ECF No. 21. Specifically, the Commissioner highlights Plaintiff's statement to a medical provider that she lost her job in 2018 due to harassment and could not find another job because she lacked adequate training and education. *Id.*

The Ninth Circuit has held that where a claimant's alleged disability is not the reason the claimant stopped working, an ALJ may discredit a claimant's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Here, however, the ALJ's reasoning fails to pass muster. Plaintiff reported to her medical provider that "she was harassed and bullied due to her race and sex[,]" that "other employees would frequently tell her to go to Standing Rock or see her as an outsider[,]" that "she was fired" from this job, and that she subsequently could not obtain another job because she lacked the proper training. Tr. 392. These reasons do not undercut Plaintiff's testimony that she "physically [could not] do" her past work or the medical record that supports Plaintiff's testimony. Tr. 63. As such, Plaintiff's work history was not a clear and convincing reason to reject her testimony.

## II.    Medical Evidence

As noted, Plaintiff challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Br. 5–17, ECF No. 17.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18, 2017). In *Woods*, the Ninth Circuit considered and discussed the impact of the new regulations on existing Circuit caselaw. *See Woods v. Kijakazi*, 32 F.4th 785, 793 (9th Cir. 2022).

Under the previous regulations, in order to reject either a treating or an examining physician's opinion, ALJs were required to "provide 'clear and convincing reasons,' if the opinion [was] uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise[.]" *Id.* at 789. In *Woods*, the Ninth Circuit held that "[t]he revised social security regulations [were] clearly irreconcilable with [its] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Id.* at 792. "Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations." *Id.*

Under the revised regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support [their]

medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§

404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is

with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

In crafting their disability determination decisions, the Ninth Circuit has instructed ALJs "to use

these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793

n.4. Thus, even under the new regulations "an ALJ cannot reject an examining or treating

doctor's opinion as unsupported or inconsistent without providing an explanation supported by

substantial evidence." *Id.* at 792.[4]

Although the Ninth Circuit in *Woods* made clear that the hierarchy among physician's

opinions no longer applies in this Circuit, the Ninth Circuit did not address whether the new

regulations upend the entire body of caselaw relating to medical evidence. This Court therefore

concludes that the reasoning from cases unrelated to the treating physician rule remains good

law. *See, e.g., Timothy P. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-02060-MK, 2022 WL

2116099, at *9 (D. Or. Jun. 13, 2022). For example, it remains true that ALJs may not cherry-

pick evidence in discounting a medical opinion. *See Ghanim*, 763 F.3d at 1162; *see also Holohan

v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some

entries in [the claimant's records while ignoring] the many others that indicated continued,

---

[4] The new regulations also remove an ALJ's obligation to make specific findings regarding relationship factors, which include: the relationship with claimant; length of treating relationship; frequency of examinations; purpose of the treatment relationship; the existence of a treatment relationship; examining relationship; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(c)(3)–(5), 416.920c(c)(3)–(5); *Woods*, 32 F.4th at 790. However, a discussion of relationship factors may be appropriate where "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Woods*, 32 F.4th at 792 (citation omitted).

severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer [their] own conclusions. [They] must set forth [their] own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

In other words, while the new regulations eliminate the previous hierarchy of medical opinion evidence that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

### A.    Irmgard E. Friedburg, Ph.D., and Scott F. Kaper, Ph.D.

Irmgard Friedburg, Ph.D. served as a state agency psychological consultant. Tr. 85. Dr. Friedburg reviewed the medical record and opined that Plaintiff is able to maintain concentration, persistence, and pace to perform simple, one- to two-step tasks, and that Plaintiff is capable of occasional, structured interactions with coworkers and the general public. *Id.* Upon

reconsideration, Scott Kaper, Ph.D., reviewed the medical record and affirmed Dr. Friedburg's opinion. Tr. 109–10.

The ALJ determined that Dr. Friedburg's and Dr. Kaper's opinions were "somewhat persuasive." Tr. 25. The ALJ noted that the consultants considered evidence that Plaintiff "reported a long history of depression, anxiety, and PTSD issues to providers, had issues with situational stressors, and was somewhat socially isolated, but was able to complete activities of daily living such as preparing meals, cleaning, and shopping." *Id.* The ALJ then determined that "[t]his evidence supports finding that the claimant can perform simple tasks with limited interactions, but does not support the limitation to structured interactions." *Id.* The Commissioner asserts this was proper because the objective record did not support the doctors' assessments. Def.'s Br. 10–12, ECF No. 21.

Inconsistency between a doctor's opinion and a claimant's daily activities can constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). When assessing whether a claimant's reported activities are inconsistent with a provider's opinions, however, an ALJ errs where she fails to base such a determination on a holistic review of the record. *See id.* ("[A] holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities.").

Here, the ALJ failed to take such a holistic view of the record. Although the ALJ cited Plaintiff's ability to prepare meals, clean, and shop, the Court finds such limited activities are not in tension with the opinions of Dr. Friedburg and Dr. Kaper. None of the cited activities undermine the social limitations assessed by Dr. Friedburg and Dr. Kaper. As such, the ALJ's rejection of these opinions was not supported by substantial evidence. *See Ghanim,* 763 F.3d at

1162 (holding that the ability to complete "some basic chores and occasionally socialize[]" is not a specific and legitimate reason to discount a doctor's opinion where a "holistic review of the record" showed the claimant "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments").

### B.    Peter LeBray, Ph.D.

Peter LeBray, Ph.D., conducted a psychological evaluation of Plaintiff in August 2020. Tr. 652. Dr. LeBray diagnosed Plaintiff with: major depression, recurrent, moderate, non-psychotic; PTSD, severe, chronic; psychological factors affecting physical condition (stress and soma); cannabis use disorder, smoking cannabis daily; specific learning disorder, mathematics; and specific learning disorder, written expression. Tr. 658. He noted that Plaintiff displayed various symptoms of severe clinical anxiety, including tingling, leg wobbliness, inability to relax, dizziness, feeling nervous, shaky, and hands trembling. Tr. 657. He noted that Plaintiff also displayed symptoms of moderate clinical depression, including feeling sad, pessimism, anhedonia, guilt, self-dislike, suicidal ideation, worthlessness, anergia, less sleep, less appetite, fatigue, and difficulty concentrating. Tr. 657–58. Dr. LeBray also noted that Plaintiff displayed symptoms of PTSD, including avoiding talking or thinking about past stressors, insomnia, difficulty concentrating, hypervigilance, and being easily startled. Tr. 658.

Dr. LeBray opined that "jobs with complex, detailed, novel, multi-tasking demands are not advised" and "[w]ork with ongoing public interaction or high literacy demands is negated." Tr. 659. Dr. LeBray also opined that Plaintiff's "[c]ombined conditions (physical [and] mental) most likely preclude persisting and sustaining demands of full-time, simpler, competitive employment." *Id.* Dr. LeBray explained that "[s]impler tasks in relaxed or low-key settings with a supportive mentor on a part-time basis may be most feasible[.]" *Id.* He also wrote that "[j]obs

with highly speeded, novel multi-tasking demands (such as small parts assembly work) are *not advised.*" Tr. 657 (emphasis in original).

The ALJ determined that Dr. LeBray's opinion was "not persuasive." Tr. 25. The ALJ explained that the opinion did not give functional limitations in mental work abilities and that the statement was "conclusory and give[s] an opinion on an issue reserved for the Commissioner, which limits the persuasiveness of the opinion[] and [its] value for evaluating the claimant's functional capacity." *Id.* The ALJ also noted that "Dr. Lebray's opinion appears to have relied heavily on the claimant's subjective report of mental symptoms[.]" *Id.* Lastly, the ALJ found that Dr. LeBray's opinion was inconsistent with the medical record. The Commissioner argues that the ALJ properly rejected Dr. LeBray's opinion because it was conclusory and inconsistent with the medical record. Def.'s Br. 13–14, ECF No. 21.

First, although an ALJ may in some circumstances discount an opinion that relies on subjective reports, the ALJ's rejection of Dr. LeBray's opinion here was improper. The Ninth Circuit has explained that self-reports in the psychiatry context differ from other treatment settings. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.").

Second, an independent review of the record reflects that Dr. LeBray's opinion is amply supported by the record. Dr. LeBray's opinion is supported by the medical record. *See, e.g.*, Tr. 381 ("[Plaintiff] has a trauma history including physical and emotional abuse as a child, physical

and sexual abuse by her significant others" and noting Plaintiff has "some emotional flashbacks when reminded of past trauma [when] she feels like the trauma will happen again"); 389 (noting that Plaintiff "struggles with boundary setting, shame, negative self-talk, lack of sense of self-esteem/self-worth, past trauma, hopelessness, thoughts of self-harm, and suicidal ideation"); 433 (noting Plaintiff's "history of chronic daily [suicidal ideation] for over past decade"). Dr. LeBray's opinion is also supported by Plaintiff's subjective symptom testimony. *See, e.g.*, Tr. 52 (testifying that she "always thinks" about suicide); 55 (testifying that she suffers from anxiety attacks around people).

Third, Dr. LeBray's opinion was not conclusory. "The ALJ need not accept the opinion of any physician, . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). A physician's reports should demonstrate how a claimant's symptoms translate into specific functional deficits which preclude certain activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Here, however, Dr. LeBray's opinion included various clinical findings that supported his opinion. Dr. LeBray also detailed Plaintiff's specific functional deficits based on Dr. LeBray's clinical findings. *See* Tr. 658–60. As such, the ALJ's rejection of Dr. LeBray's opinion was not supported by substantial evidence.

## III.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings

depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors discussed above. The ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony and the medical opinion evidence. As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). The Court finds that the record here has been fully developed no material conflicts and ambiguities exist. As to the third requisite, in

crediting the discredited evidence as true, the ALJ would be required to find Plaintiff disabled on remand. Plaintiff testified that she needed frequent breaks when she is "having an anxiety attack" or "having issues with [her] post-traumatic stress disorder." Tr. 47. At the hearing, the VE testified that an individual who is off task twenty percent of the day or absent two or more days per month could not sustain competitive employment. Tr. 70. As such, on remand, the ALJ would be compelled to find Plaintiff disabled. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (remanding for an immediate payment of benefits after crediting improperly rejected evidence as true, combined with VE testimony, established disability).

Lastly, considering the record as a whole, the Court has no basis to doubt that Plaintiff is disabled under the Act. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). As such, the Court concludes the proper remedy in this case is to remand for a calculation of benefits. *See Garrison*, 759 F.3d at 1022–23.

### ORDER

For the reasons set forth above, the decision of the Commissioner is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED and DATED this _2_ day of March, 2023.

MARK D. CLARKE
United States Magistrate Judge